Elgie HAM et ux., Appellants,

v.

McDONALD WELL SERVICING COMPANY et al., Appellees.

No. 3770.

Court of Civil Appeals of Texas.

Eastland.

Jan. 25, 1963.

Rehearing Denied Feb. 22, 1963.

Dan Abbott and James Weeks, Abilene, for appellants.

Scarborough, Black & Tarpley, Abilene, for appellees.

WALTER, Justice.

Elgie Ham and wife filed suit against McDonald Well Servicing Company and its truck driver, Oscar White, for damages alleged to have been sustained by Mrs. Ham as a result of a collision between an automobile driven by Mrs. Ham and a truck driven by Mr. White. Based upon a verdict that Mrs. Ham failed to keep a proper lookout and failed to give a proper signal before making a left turn which were proximate causes of the collision, and that White was not driving at an excessive rate of speed and that he did not fail to keep a proper lookout, judgment was rendered for the defendants.

The plaintiffs have appealed, contending the court erred in failing to submit their requested issues on discovered peril. The only question presented is whether the evidence raised such issues.

The collision occurred at the intersection of U. S. Highways 83 and 84 at a "Y" intersection approximately 12 miles South of Abilene between 7:30 and 8:00 o'clock p. m. on or about October 8, 1960. Mrs. Ham approached the "Y" intersection traveling in a northerly direction. She intended to make a U-turn at the crossover. As she started making a left turn at the crossover she was struck by defendant's truck from the rear.

Mr. White first saw Mrs. Ham's car when it was about 100 yards from the point where the accident occurred, at which time he was approximately one-fourth of a mile behind her traveling in the same direction. He was traveling about 55 miles per hour. At such time she was on the right hand side of the highway and partly on the shoulder. The tail lights of her car first attracted his attention. He was asked, "Well, from one hundred yards from where the accident happened to one hundred feet then she stayed off on the shoulder?" He answered, "More or less, yes." When Mrs. Ham was within one hundred feet of the point of impact she turned across the road to her left. When asked, "Now, when she was one hundred feet from that cross-over, how far were you from her car?", he answered, "I was pretty close. I wouldn't say in feet, because I wouldn't know, but it was close enough to start applying the brakes. I could see that she was coming on across the road." At the time Mrs. Ham started a gradual angle to her left at about one hundred feet from the point of the collision, he estimated that he was approximately one hundred eighty feet back of her and about two hundred eighty feet from the point of the collision. Mrs. Ham's car was turning to the left at a slight angle when his truck collided with it. She was traveling in the right hand lane before she came to the intersection where she turned. He saw her brake lights come on when she was in the right hand lane moving to her left hand lane when she was about thirty to fifty feet from the spot where the collision occurred and he was approximately one hundred twenty feet from her car. He applied his brakes at this point. In his deposition he testified that he realized that he was going to hit Mrs. Ham's car when she pulled in front of him. This was when he was approximately twenty feet behind her.

Mrs. Ham testified that she did not know that a car was approaching her from the rear as she was moving over into her left lane. At the time of the collision she had just applied her brakes to make a turn. She was traveling about 10 miles per hour at the time of the collision.

A highway patrolman testified that the point of impact was in the left lane. He further testified that a vehicle traveling 55 miles per hour would be traveling approximately 80 feet per second.

Donald Ham was waiting for his mother at the intersection at the time of the collision. He estimated his mother's car was

traveling five or ten miles per hour before the collision. She was beginning to turn at the time she was hit. He further testified that White laid down 127 feet of skid marks. White was driving in the left lane.

Appellants contend that White, traveling at approximately 55 miles per hour, saw Mrs. Ham "coming across the road" when she was 100 feet from the point of the collision and when he was approximately 180 feet to the rear of her car. They contend that under these circumstances White was aware of the dangerous situation "for nearly four seconds before the impact occurred." They contend that when these distances and speed are analyzed, White's brakes should have been applied 214 feet from the point where the accident actually occurred. Appellants further contend "White's brakes did not come on until his vehicle was 127 feet from the point of the accident which leaves 87 feet or a full second during which said Appellee did nothing. Certainly if the brakes on Appellee's truck had been applied for that full second or if Oscar White had used that full second to turn his pickup truck to his right, the accident would not have occurred."

The Supreme Court in R. T. Herrin Petroleum Transport Co. v. Proctor, 161 Tex. 222, 338 S.W.2d 422 said, "In most cases of this kind some way or means whereby collision could have been prevented may be figured out,—after the catastrophe has occurred", and held "in order to charge one with liability under the doctrine of discovered peril, there must exist a clear chance to avoid injury which could have been reasonably perceived by the party sought to be held."

When did Mrs. Ham reach a point where she became exposed to imminent collision with White's truck? When he was approximately one quarter of a mile from her, he saw her as she was traveling in the right hand lane partly on the shoulder. She proceeded partially on the shoulder of the highway for some distance. She was not in a perilous position at this point. She then started a gradual angle to her left. She was in the right hand lane before she came to the intersection where she turned. She was not in a perilous position at this point. When she started moving from the right to the left lane, she placed herself in a perilous position. White was charged with a duty at this point to prevent the collision, if he discovered her position in time to have prevented it by the use of all the means at his command commensurate with his own safety. Safeway Stores, Inc., v. White, Sup.Ct., 348 S.W.2d 162. He applied his brakes at this point and laid down 127 feet of skid marks. We must view the evidence in its most favorable light to the plaintiffs and disregard all evidence favorable to the defendants in determining whether the evidence raised such issues. White did not discover the danger in time to avoid the accident by using all the means at his command. "The doctrine of discovered peril or last clear chance means certainly that the last clear chance must be a clear one. Gaudette v. McLaughlin, 88 N.H. 368, 189 A. 872. It implies thought, appreciation, mental direction, and lapse of sufficient time to act effectually upon the impulse to save another from injury." Schuhmacher Co. v. Posey, 147 Tex. 392, 215 S.W.2d 880.

We have concluded that there was no evidence that White had a last clear chance to avoid the collision. The court did not err in refusing to submit appellants' issues on discovered peril.

The judgment is affirmed.